USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/19/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAMMI GREEN,

Plaintiff,

-against-

COUNTY OF ORANGE, *et al.*,

Defendants.

No. 25 Civ. 03278 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Tammi Green ("Plaintiff"), formerly detained at the Orange County Correctional Facility ("OCCF"), brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983" or "Section 1983") and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA"), against the County of Orange (the "County"); Sheriff's Office officers Joshua Conca, Greg Palmer, and Brian Sedita; correctional officers Angelo Narcise and Michael Lattimer; and Sergeants Nicholas Gessner and Daniel Mullins at the Orange County Jail, alleging violations of her rights under the First and Fourteenth Amendments of the U.S. Constitution and under RLUIPA arising from the forced removal of her hijab for booking and identification photographs, the confiscation and destruction of her religious items during cell searches, the denial of religiously compliant meals during Ramadan, and retaliation for her complaints about her conditions of confinement.[1] (*See generally* First Amended Complaint ("FAC"), ECF No. 36.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the County and the appearing individual defendants (collectively, the "County Defendants") have moved for partial dismissal of

[1] The John Doe defendants (#1–8) have not been identified or served. The docket reflects that summonses were issued and executed only as to the County and the seven named individual defendants. (ECF Nos. 12-28.) No claim against the John Doe defendants is before the Court on this motion.

the FAC. The County Defendants filed a Memorandum of Law ("Defs.' Mem.," ECF No. 52) and a Reply ("Defs.' Reply," ECF No. 54) in support of their motion. Plaintiff filed an opposition ("Pl. Opp'n," ECF No. 55). For the following reasons, the County Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Factual Allegations

The following relevant facts are derived from the FAC and the documents appended thereto and are assumed to be true for the purposes of resolving this motion.[2]

Plaintiff is a practicing Muslim woman who, in accordance with her sincerely held religious beliefs, wears a hijab in the presence of any adult man to whom she is not married or sufficiently related, and observes the fasting obligation of Ramadan (*sawm*), during which she must abstain from food, water, and medication from dawn until sunset. (FAC ¶¶ 35–39, 123–126.)

On February 2, 2024, upon booking, officers required Plaintiff to remove her hijab for a booking photograph and, later that day, for a jail identification-card photograph, over her repeated objections and after she was threatened with a disciplinary charge. (*Id*. ¶¶ 42–57.) Plaintiff was thereafter required to display and use an identification card bearing her uncovered image five to six times per day for more than eight months. (*Id*. ¶¶ 59–65.) After filing three grievances in 2024, Plaintiff was permitted to retake her identification photograph while covered in late October 2024; she alleges that, to the extent the uncovered photograph remains in the County's system, the harm is ongoing. (*Id*. ¶¶ 66–69.) Plaintiff further alleges that she had been required to remove her hijab on more than thirty prior occasions while being booked at the jail, and that at least four other

[2] The FAC contains a numbering defect: the paragraph sequence runs continuously through paragraph 158 (pages 15–18) and then, partway down page 18, restarts at paragraph 132 and repeats the numbers 132 through 158 (pages 18–21). *See* Def. Mem. at 1 n.2. Paragraphs numbered 132 through 158 therefore appear twice. To avoid ambiguity, the Court cites the duplicated allegations by both paragraph number and page.

religiously observant individuals were likewise required to remove religious head coverings for photographs. (*Id.* ¶¶ 70–77.)

Plaintiff alleges that on August 19, 2024, she approached Defendant Gessner to complain that she and other inmates were being deprived of sufficient recreation time, citing a jail regulation requiring seven hours of recreation in a twenty-four-hour period; that officers and inmates nearby overheard the complaint; and that Lieutenant Cimarelli, who overheard it, agreed with her and told Gessner to change the schedule. (*Id.* ¶¶ 84–87.) She alleges, on information and belief, that Narcise and Lattimer were made aware of the complaint by Gessner, Cimarelli, and/or other officers or inmates. (*Id.* ¶ 88.) Early the next morning, August 20, 2024, while Plaintiff was sleeping, Narcise, Lattimer, Gessner, and John Doe #5 ordered her from her cell; when she asked to put on her hijab first, the officers refused, requiring her to stand outside the cell uncovered while Narcise and Gessner searched inside and Lattimer and John Doe #5 monitored her. (*Id.* ¶¶ 89–90.) Her two hijabs and her Quran were confiscated, and the string of her misbahah was broken and its beads scattered. (*Id.* ¶¶ 91–92.) As the officers left, Gessner told her, "[t]he next time you want to quote the law at me, you should know that I am the law in here." (*Id.* ¶ 94.) Plaintiff alleges that hers was the only cell searched in the unit. (*Id.* ¶ 95.)

Plaintiff alleges that on the morning of January 18, 2025, an announcement stated that her unit would be searched for metal spoons mistakenly given to inmates; she alleges, on information and belief, that no such spoons had been distributed, and she characterizes the ensuing search of her cell as targeted and retaliatory. (*Id.* ¶¶ 110–112.) Narcise, who had participated in the August 20 sweep, entered her cell with John Does #6–8. (*Id.* ¶ 113.) When the search was over, Plaintiff found that her Quran had been thrown to the ground and, she alleges, purposefully stepped on by Narcise; that her religious notes had been torn apart; and that her misbahah had been taken. (*Id.* ¶¶

114–117.) After she was again denied a grievance form, Plaintiff obtained one and filed it on January 19, 2025. (*Id.* ¶ 118.) The grievance alleged that the search was retaliation for two things: the grievances she had filed about the August 20, 2024 sweep, which Narcise knew about, and a December 10, 2024 demand letter her counsel had sent the County. (*Id.* ¶¶ 118–121.) She alleges, on information and belief, that Narcise learned of the demand letter days before the January 18 search. (*Id.*)

Plaintiff further alleges that she was granted the Ramadan meal program in February 2025, and that during the first four days of Ramadan her Kosher meals and medication were delivered as expected. (*Id.* ¶¶ 130, 133, p. 15.) On the evening of March 4, 2025, however, she was delivered a non-religious meal containing ingredients forbidden by her faith and was unable to break her fast. (*Id.* ¶¶ 134–135, p. 15.) She informed Sergeant Mullins, the officer in charge of delivering meals, who gave her a grievance form rather than arranging a compliant meal. (*Id.* ¶ 136, p. 16.) The next morning, March 5, the facility failed to deliver her pre-dawn meal and her prescribed medication, and she went nearly thirty-seven hours without food, suffering exhaustion, nausea, and severe gastrointestinal pain. (*Id.* ¶¶ 139–144, p. 16.) Separately, on at least two occasions in January and February 2025, and again on March 24, 2025, officers served a pork-derived cereal in lieu of a compliant meal; her grievance was accepted and denied in part on March 31, 2025, with the Grievance Coordinator ordering that the cereal no longer be served and finding that the officers had not known it was prohibited. (*Id.* ¶¶ 146–151, p. 17.)

Finally, Plaintiff alleges that at approximately 8:00 p.m. on April 1, 2025, officers began a surprise contraband search of her entire unit; that she was removed from her cell, escorted out of the unit, and subjected to a full-body search; and that, while she was away, other inmates observed multiple officers entering her cell. (*Id.* ¶¶ 153–154, pp. 17–18.) She alleges that an officer took her

spare hijab and threw it from a ledge to the floor one story below, that it was never returned, and that the desecration was targeted, malicious, and served no legitimate law enforcement purpose. (*Id.* ¶¶ 155–157, p. 18.) She further alleges that officers repeatedly denied her a grievance form until April 3, 2025. (*Id.* ¶ 158, p. 18.)

## II. Procedural History

Plaintiff commenced this action on April 21, 2025. (ECF No. 1.) On consent and with leave of the Court, she filed the FAC on June 9, 2025, which supplied the individual defendants' first names. (ECF No. 36.) After the parties exchanged pre-motion letters, (ECF Nos. 31, 37, 39), the Court waived a pre-motion conference and set a briefing schedule. (ECF No. 40.) The motion papers were filed on September 15, 2025. (ECF Nos. 50–56.)

The County Defendants' motion is partial. They do not move to dismiss Plaintiff's First Amendment free exercise claim as against Defendants Conca, Palmer, Sedita, Narcise, or Gessner; the sufficiency of those allegations is not challenged. Nor do they move to dismiss the claim for failure to intervene as against Conca, Palmer, Sedita, Narcise, or Gessner; that claim likewise survives as to those Defendants.[3]

The motion challenges: (i) the municipal liability claim under Section 1983; (ii) the RLUIPA claim against the County; (iii) certain March and April 2025 allegations as unexhausted under the Prison Litigation Reform Act ("PLRA"); (iv) the retaliation claims against Narcise, Lattimer, and Gessner; (v) the failure-to-intervene claims against Mullins and Lattimer; (vi) the free exercise claim against Mullins; (vii) a reference to the Fourth Amendment in the second cause of action; and (viii) the free exercise claim against Lattimer. The non-moving defendants were

[3] The County Defendants represent that Plaintiff withdrew her claim for negligent training and supervision by pre-motion letter dated June 27, 2025 (ECF No. 39). Def. Mem. at 1 n.3. Plaintiff does not address or defend this claim in her opposition. The Court therefore treats the claim as withdrawn and does not consider it.

granted until fourteen days after the resolution of this motion to answer, (ECF No. 43), and discovery has been stayed pending its resolution. (ECF No. 63.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the district court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, it is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether a plaintiff has pled sufficient facts to nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. Threshold Matters

In support of their motion, the County Defendants submit a report from the New York State Division of Criminal Justice Services reflecting average daily jail populations and rely on it for the proposition that the average number of inmates held at OCCF daily in 2024 was 332, and that the average was higher in prior years. (Lagitch Decl. Ex. B, at 17, ECF No. 51; Defs.' Mem. at 7.) Plaintiff does not dispute the accuracy of that figure or object to its consideration. She contends instead that the total jail population is the wrong comparator, and that the relevant pool is the number of individuals wearing religious head coverings upon booking. (Pl. Opp'n at 10.) That dispute is not evidentiary but analytical, and the Court addresses it below.

Two categories of material submitted by the parties are not properly before the Court. First, Plaintiff relies, in her opposition, on statewide statistics drawn from a 2021 report of the New York State Department of Corrections and Community Supervision. (Pl. Opp'n at 10 n.2.) Those statistics appear nowhere in the FAC, describe a different institution, and are offered by Plaintiff not as established fact but as a basis to "inquire into those numbers in discovery." (*Id.*) However, a plaintiff is not entitled to amend her complaint through statements made in a brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (a party is not entitled to amend its complaint through statements made in motion papers). Second, the County Defendants assert, for the first time in their Reply, that OCCF records reflect Plaintiff did not identify as Muslim during multiple prior bookings, and that individuals held at OCCF are photographed only once upon entry. (Defs.' Reply at 2 n.3, 3 n.4.) These are factual assertions that appear nowhere in the pleadings, are offered without record support, and were raised at a point in the briefing at which Plaintiff had no opportunity to respond. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (arguments raised for the first time in a reply brief need not be considered). The Court declines to consider either submission and decides the motion exclusively upon the allegations of the FAC.

## II. Section 1983 and RLUIPA Claims Against the County

Plaintiff asserts two claims against the County. The first claim, brought under Section 1983, alleges that the County maintains a policy, custom, or usage of requiring religiously observant individuals, including Muslim women, to remove their religious head coverings for post-arrest photographs, and, in the alternative, that the County was deliberately indifferent to the known risk of constitutional injury arising from an ongoing failure to accommodate religious exercise during arrest processing, including booking and identification. (FAC ¶ 185.) The second claim, brought under RLUIPA, alleges that the County substantially burdened Plaintiff's religious exercise not only through the photographs but also through the confiscation and destruction of her religious items and the denial of religiously compliant meals. (FAC ¶¶ 176–180.) The County Defendants challenge both claims on a single ground: that Plaintiff has not adequately alleged that any burden resulted from a municipal policy, custom, or practice. (Defs.' Mem. at 4–10.) The Court therefore addresses the municipal liability standard first and turns to RLUIPA thereafter.

### A. Legal Framework

A municipality may not be held liable under Section 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To state a claim, a plaintiff must plead "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). Only the fifth element is at issue here. A plaintiff may satisfy that requirement in one of several ways: by alleging a formal policy, action by a final policymaker, a practice so persistent and widespread as to constitute a custom, or a failure to train amounting to deliberate indifference. *See Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).

Plaintiff proceeds on the custom theory, so the analysis turns on what a custom requires. A custom must ultimately be "permanent and well settled," *id.* at *16, but at the pleading stage the bar is not a high one. Before discovery, a plaintiff need only allege facts permitting a plausible inference of a widespread practice or informal custom. *DiPippo v. County of Putnam*, No. 17-CV-7948 (NSR), 2019 WL 1004152, at *9 (S.D.N.Y. Feb. 28, 2019); *Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011). In assessing plausibility, the Court considers the number of instances alleged relative to the size of the department and the relevant time frame, though "there is no per se rule that a Plaintiff must plead a specific number of unconstitutional violations." *DiPippo*, 2019 WL 1004152, at *4; *Medina v. City of New York*, No. 19-CV-9412, 2020 WL 7028688, at *3 (S.D.N.Y. Nov. 30, 2020).

**B. The Section 1983 Claim**

The County Defendants argue that four instances cannot establish a widespread custom. (Defs.' Mem. at 6–8.) They stress that three of the four women are unidentified, that the FAC gives no dates, and that several allegations are made only on information and belief. (*Id.*) Plaintiff responds that the pleading bar is low: courts in this Circuit regularly sustain custom claims built on just a handful of examples. (Pl. Opp'n at 8–10.) Plaintiff adds that the cases the County relies on were decided at later stages of litigation, not on a motion to dismiss. (*Id.*)

The problem with Plaintiff's custom allegations is not how many instances she pleads, but how little she says about them. Plaintiff is right that the number is not the obstacle. The pre-discovery standard for pleading a custom "is not a high bar," *DiPippo*, 2019 WL 1004152, at *9, and courts have sustained custom allegations resting on as few as two or three instances. *Ferrari*, 790 F. Supp. 2d at 46; *Washington v. City of New York*, No. 18-CV-12306, 2019 WL 2120524, at *22 (S.D.N.Y. Apr. 30, 2019). She is also right that the County's cases do not control here. Those

cases arose at a different procedural stage; there, the question was whether the evidence, after trial, could support a verdict—a question of proof, not of pleading. *Jones v. Town of East Haven*, 691 F.3d 72, 74, 85 (2d Cir. 2012). The question here is whether the FAC states a claim.

But being right about the number does not save the claim, because the deficiency lies in what supports the instances, not in how many there are. Plaintiff identifies the controlling principle in her own brief. Distinguishing *Tieman*, she explains that the claim there failed because the plaintiff relied on "unsubstantiated allegations in lawsuits and complaints by residents." (Pl. Opp'n at 9 (quoting *Tieman*, 2015 WL 1379652, at *17).) That characterization is accurate, and it states the rule that decides this case. *Tieman* holds that allegations of a municipal custom are insufficient "unless supported by factual details," and that "the number of complaints filed, without more, indicates nothing," because "[p]eople may file a complaint for many reasons, or for no reason at all." 2015 WL 1379652, at *3.

The cases Plaintiff relies on prove the same point: each survived because the plaintiff provided concrete facts about the other instances. In *Ferrari*, the two supporting instances were prior lawsuits identified by docket number and reported decision, one of which the County had resolved by payment; the court held the allegation was "not conclusory" because the plaintiff "augment[ed]" it "by identifying, without the benefit of discovery, two other instances." 790 F. Supp. 2d at 46. In *Washington*, the claim survived because the plaintiffs "pointed to specific cases of alleged policy and practice," and the court contrasted a decision dismissing a claim where the plaintiff "failed to identify any details about other instances of misconduct." 2019 WL 2120524, at *22. In *DiPippo*, the plaintiff described coercive techniques used against at least six identified witnesses within a single documented investigation, which the court called "ample specific facts."

2019 WL 1004152, at *9. In each case, the court could identify what the other instances actually were.

Here, only one of the four women is identified. Plaintiff names Crystal Rios and alleges, on information and belief, the language officers used, instructing her to "take that sheet off [her] head" and describing her hijab as a "pillowcase." (FAC ¶¶ 71–72.) The remaining three are described only as a woman "in her mid-30s," "an Orthodox Jew," and "a fourth woman that Plaintiff is aware of." (FAC ¶¶ 73–75.) Plaintiff provides very little information. She alleges no date, and no approximate period, for any of the four removals.

A custom claim also requires facts showing that the County "was aware of [a] pattern or custom and acquiesced to unconstitutional conduct." *DiPippo*, 2019 WL 1004152, at *4. Plaintiff alleges, again on information and belief, that Ms. Rios and the second woman "grieved" the removal of their hijabs after learning that Plaintiff had been permitted to retake her identification photograph in October 2024. (FAC ¶ 73.) The FAC does not allege that either woman requested or submitted a grievance form, that any grievance was received or decided, or what its outcome was. Where Plaintiff describes her own resort to the grievance process, the pleading supplies those details. (*See, e.g.*, FAC ¶¶ 66, 96–98, 118–119.) The FAC, however, fails to plead facts from which the Court can plausibly infer that the County knew of the alleged practice and tolerated it concerning the other women.

Plaintiff's allegation that she was required to remove her hijab at more than thirty prior bookings stands on different footing. That allegation rests on her own experience rather than on secondhand report, and she needs no discovery to describe it. The County Defendants nonetheless identify three gaps: Plaintiff specifies no time frame for these bookings, identifies no officer who required the removals, and does not allege that she grieved or otherwise challenged any of them.

(Defs.' Mem. at 8; Defs.' Reply at 2.) A custom must be sufficiently settled to "imply the constructive knowledge of policymaking officials." *Medina*, 2020 WL 7028688, at *6. Nothing in the FAC suggests the County was aware of these removals.

The parties dispute the right denominator. The County measures four instances against an average daily population of 332 and calls them negligible. (Defs.' Mem. at 7.) Plaintiff counters that the relevant pool is those who wear religious head coverings at booking, not the jail at large. (Pl. Opp'n at 10.) The Court need not choose. The denominator matters only once the instances are adequately pleaded, and here they are not. Whichever denominator applies, four undated incidents, three of them attributed to unnamed individuals, do not establish a settled practice. *See Medina*, 2020 WL 7028688, at *7 (whether allegations establish a custom "cannot be determined by looking at the numbers alone").

Nor does the Court rely on the County Defendants' contention that Plaintiff's eventual retaken photograph defeats the inference of a custom. (Defs.' Mem. at 8; Defs.' Reply at 2–3.) Plaintiff alleges that the accommodation followed eight months and three grievances, and that it addressed her identification photograph rather than the booking practice itself. (FAC ¶¶ 66–69.) Read in the light most favorable to Plaintiff, a belated and individualized accommodation obtained through the grievance process does not necessarily negate a practice alleged to operate at an earlier stage.

Plaintiff has therefore not pleaded facts permitting a plausible inference that the County maintained a custom or practice of requiring religiously observant individuals to remove religious head coverings for post-arrest photographs. This claim is dismissed as against the County. Because the deficiencies identified above may be curable by amendment, the dismissal is without prejudice, and the Court addresses leave to replead below.

### C. The RLUIPA Claim

The RLUIPA claim rises or falls with the *Monell* claim. The County Defendants challenge it only derivatively, arguing that a RLUIPA claim against a municipality, like a Section 1983 claim, requires allegations that the substantial burden stemmed from an official policy, custom, or practice. *See Wilson v. City of New York*, No. 18-CV-2262 (AMD)(MMH), 2023 WL 1070458, at *4 n.10 (E.D.N.Y. Jan. 27, 2023) (dismissing RLUIPA claims against the City on that ground). Plaintiff briefs the claim the same way, treating RLUIPA as coextensive with *Monell* and offering no independent theory of municipal liability.

Because both sides treat the RLUIPA claim as tracking the *Monell* claim, it fails for the same reason. For the reasons given in the preceding section, Plaintiff has not pleaded facts permitting a plausible inference that the head-covering removals stemmed from an official policy, custom, or practice. The RLUIPA claim is dismissed as against the County, without prejudice.

## III. Exhaustion Under the PLRA

The County Defendants raise two exhaustion-related arguments. First, they contend that Plaintiff failed to exhaust administrative remedies as to the March 2025 meal allegations and the April 1, 2025 cell-search allegations. Second, they contend that Mullins must be dismissed entirely, because the only conduct alleged against him is the March 4 meal. (Defs.' Mem. at 11–14; Defs.' Reply at 4–6.)

### A. Legal Framework

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The requirement is broad: it applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and holds regardless of the relief the

administrative process offers, *Booth v. Churner*, 532 U.S. 731, 741 (2001). Exhaustion must be complete before suit is filed; a prisoner may not exhaust while the action is pending. *Schwartz v. Dennison*, 518 F. Supp. 2d 560, 568 (S.D.N.Y. 2007). And because an action is “brought” when the original complaint is filed, exhaustion is measured as of that date, not the date of any later amendment. *Prescott v. Annetts*, No. 09 Civ. 4435 (CM)(LMS), 2010 WL 3020023, at *4 (S.D.N.Y. July 22, 2010).

Two limits shape how the requirement is applied on a motion to dismiss. First, failure to exhaust is an affirmative defense, so a prisoner need not plead or prove exhaustion, and dismissal under Rule 12(b)(6) is appropriate only where non-exhaustion is clear on the face of the complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003). Second, administrative remedies that are unavailable need not be exhausted. *Ross v. Blake*, 578 U.S. 632, 642 (2016). Here, the available process is set by the Minimum Standards for county correctional facilities, under which a grievance proceeds through a determination by the grievance coordinator, an appeal to the Chief Administrative Officer, and a final appeal to the State Commission of Correction. N.Y. Comp. Codes R. & Regs. tit. 9, §§ 7032.4 to .5 (2024). Exhaustion is complete only when that process has run its course.

**B. Exhaustion of the March and April 2025 Allegations**

The FAC shows that Plaintiff knew how to exhaust and did so for other grievances. She alleges that she fully appealed her August 2024 and January 2025 grievances through to final denial, expressly pleading that she “therefore exhausted her available administrative remedies.” (FAC ¶¶ 105–109, 122.) The County does not seek dismissal of those claims; they matter here only as a contrast to the March and April grievances.

The March and April 2025 grievances are pleaded differently. As to the March 4 meal, Plaintiff alleges that she submitted a grievance the following day and that it was denied in part. (FAC ¶¶ 136–137, p. 16.) No appeal is alleged. As to the April 1 search, Plaintiff alleges that she filed a grievance on April 3 and that, the following day, she was told the matter was "pending an investigation." (FAC ¶ 158, p. 18.) No determination and no appeal is alleged, and Plaintiff commenced this action on April 21, 2025, while the grievance remained pending.[4] Unlike the grievances Plaintiff describes as exhausted, the pleading does not allege that either of these was carried through the appeals the Minimum Standards require. Non-exhaustion is therefore clear on the face of the complaint.

Plaintiff's contrary arguments do not alter that conclusion. She contends that administrative remedies may have been unavailable to her, because she was unaware of the appeal procedure or because the procedures were too opaque to use. (Pl. Opp'n at 22–24 (citing *Ross*, 578 U.S. at 642; *Ruggiero v. County of Orange*, 467 F.3d 170 (2d Cir. 2006); *Williams v. Correction Officer Priatno*, 829 F.3d 118 (2d Cir. 2016)).) But Plaintiff never pleaded unavailability as a basis to excuse exhaustion; the argument appears for the first time in her opposition, and a represented party may not amend her complaint through statements in a brief. *Wright*, 152 F.3d at 178. Even crediting the allegations that officers at times delayed or withheld grievance forms, those allegations concern getting an initial grievance filed, not appealing one. Plaintiff filed grievances as to both the March meal and the April search; what she never did was appeal either one, as the Minimum Standards require. And she plainly knew how to appeal—the same pleading describes her appealing her August and January grievances to a final decision during this very period.

[4] Plaintiff commenced this action on April 21, 2025. (ECF No. 1.) The County Defendants' memorandum gives April 23, 2025 (Def. Mem. at 1), the date the summonses issued; for exhaustion purposes the operative date is the filing of the original complaint. *See Prescott*, 2010 WL 3020023, at *4.

Nothing in the complaint suggests she was prevented from doing the same for the March and April grievances.

Nor does *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004), excuse exhaustion of the March meal claim. Plaintiff points to the favorable March 31 ruling directing that cereal containing pork-derived gelatin no longer be served. But that ruling resolved a separate grievance, one about the cereal served in January, February, and on March 24. (FAC ¶¶ 146–151, p. 17.) The March 4 meal and the March 5 failure to provide a pre-dawn meal and medication were the subject of a different grievance, which was denied and never appealed. (FAC ¶¶ 136–137, p. 16.) *Abney* excuses a prisoner from appealing a grievance resolved in her favor; it does not excuse the failure to appeal a different grievance that was denied. That the two grievances concern the same general subject does not merge them: exhaustion is required grievance by grievance.

The March 2025 meal allegations and the April 1, 2025, cell-search allegations are therefore dismissed without prejudice for failure to exhaust.

**C. Dismissal of Mullins in His Entirety**

The County Defendants contend the FAC should be dismissed in its entirety as to Mullins because, in their view, his only alleged conduct is the March 4 meal. (Defs.' Mem. at 14; Defs.' Reply at 5–6.)

The FAC alleges two categories of conduct by Mullins. The first is the Ramadan meals: Plaintiff alleges that she informed Mullins, the officer in charge of delivering meals, that the March 4 meal was non-compliant, and that he responded by supplying a grievance form rather than arranging a compliant meal. (FAC ¶ 136, p. 16.) Her first claim rests on the same conduct, alleging that Mullins failed to provide meals at appropriate Ramadan mealtimes and failed to provide meals

complying with her religious dietary requirements. (FAC ¶ 156, p. 21.) That conduct falls within the March 2025 meal allegations dismissed above as unexhausted.

The second is the failure-to-intervene allegation, which states that "[i]n January through March 2025, Defendant Mullins was aware of multiple violations of Plaintiff's constitutional rights, had a reasonable opportunity to intervene, and chose not to do so." (FAC ¶ 165.) That allegation identifies no incident at which Mullins was present and no violation he is alleged to have observed; it supplies only a three-month range and the legal elements of the claim. The failure-to-intervene allegations against the other individual defendants stand in contrast: each ties the officer to a specific date and incident. (*See* FAC ¶ 162 (February 2, 2024 booking and arraignment); FAC ¶ 163 (August 20, 2024 cell sweep); FAC ¶ 164 (January 18, 2025 cell sweep).) Because paragraph 165 identifies no deprivation Mullins is alleged to have witnessed, it does not permit the inference that he had a realistic opportunity to intervene. *Iqbal*, 556 U.S. at 678.

The remaining references to Mullins list him among the individual defendants without attributing conduct to him. (FAC ¶¶ 32, 161, 168.) With the March 2025 meal allegations dismissed and the failure-to-intervene allegation insufficient to state a claim, no allegation against Mullins remains. The FAC is dismissed as to Mullins, without prejudice.

## IV. Retaliation as to Narcise, Lattimer, and Gessner

To state a First Amendment retaliation claim, a prisoner must allege that the conduct at issue was protected, that the defendant took adverse action, and that there was a causal connection between the two. *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015); *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). The causal connection must support an inference that the protected conduct "played a substantial part" in the adverse action. *Colon v. Coughlin*, 58 F.3d 865, 872–73

(2d Cir. 1995). The County Defendants concede that Plaintiff's August 19 complaint was protected and that the destruction of her religious items was an adverse action; the dispute is causation.

**A. The August 20, 2024 Search as to Narcise, Lattimer, and Gessner**

The County contends that Plaintiff pleads Narcise's and Lattimer's knowledge of her protected activity only on information and belief. (Defs.' Mem. at 16; Defs.' Reply at 6–7 (citing *Muniz v. Orange County*, No. 22 Civ. 529 (NSR), 2024 WL 1142550, at *10 (S.D.N.Y. Mar. 14, 2024)).) Plaintiff responds that the FAC pleads the factual basis for the officers' knowledge, and that an allegation made on information and belief is proper where accompanied by supporting facts. *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006).

The claim is adequately pleaded as to Gessner. Plaintiff made her complaint directly to him, (FAC ¶ 84), so his knowledge of the protected activity is pleaded as fact, not inference. His statement as the officers left her cell—"[t]he next time you want to quote the law at me, you should know that I am the law in here," (FAC ¶ 94)—refers directly back to that complaint and supports the inference that it played a substantial part in the search. *Colon*, 58 F.3d at 872–73. The County's contention that Gessner lacked authority over the recreation schedule, and so lacked a retaliatory motive, raises a factual question not resolvable on the pleadings; the alleged statement supplies the causal link regardless of who controlled the schedule.

The claim is not adequately pleaded as to Narcise and Lattimer. A retaliation claim requires that the defendant who took the adverse action knew of the protected activity. *Davis*, 320 F.3d at 353. Plaintiff does not allege that Narcise or Lattimer heard her complaint or were present for her conversation with Gessner. She alleges only, "[o]n information and belief," that they "were made aware of" the complaint "by Sgt. Gessner, Lt. Cimarelli, and/or other Orange County Jail officers or inmates." (FAC ¶ 88.) That the complaint was overheard by unspecified others, (FAC ¶ 85),

and that Cimarelli confronted Gessner about it, (FAC ¶ 87), does not supply the missing link; neither allegation connects the complaint to Narcise or Lattimer. An allegation of knowledge made on information and belief must be accompanied by facts on which the belief is founded. *Muniz*, 2024 WL 1142550, at *4. Paragraph 88 supplies none; it names every possible source in the disjunctive without alleging that any of them in fact told either officer anything. The presence of Narcise and Lattimer at the search, and Narcise's participation in it, establish that they conducted the search, not that they knew of the complaint that allegedly motivated it. The retaliation claim arising from the August 20, 2024 search is dismissed as to Narcise and Lattimer, without prejudice, and survives as to Gessner.

**B. The January 18, 2025 Search as to Narcise**

The retaliation claim arising from the January 18, 2025 search is brought against Narcise alone, and it fails for the same reason the August claim failed as to Narcise. Plaintiff alleges that the January search was retaliation for the grievance she filed against Narcise after the August 20 search. But as with the August incident, the FAC does not plead facts showing that Narcise knew of the grievance; the knowledge allegation is again made only on information and belief. *Muniz*, 2024 WL 1142550, at *4.

The County raises other arguments, that the search was conducted throughout the unit rather than aimed at Plaintiff's cell, and that destruction of religious items in a unit-wide search is not an adverse action directed at Plaintiff. (Defs.' Mem. at 17–18; Defs.' Reply at 7–8.) The Court need not reach them. Even assuming the destruction of her religious items counts as an adverse action, *see Collins*, 438 F. Supp. 2d at 418, and even assuming the five-month gap is close enough to suggest retaliation, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009); *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 553 (2d Cir. 2001), the claim still

fails because the complaint never pleads any basis for saying Narcise knew about the grievance. The retaliation claim arising from the January 18, 2025 search is dismissed as to Narcise, without prejudice.

**C. The April 1, 2025 Search**

The retaliation claim arising from the April 1, 2025 search is dismissed for failure to exhaust, for the reasons stated above. The Court does not reach its merits.

**V. Failure to Intervene as to Lattimer**

An officer may be liable for failing to intervene in a constitutional violation where the officer had a realistic opportunity to intervene to prevent the harm, a reasonable person in the officer's position would know that the victim's rights were being violated, and the officer failed to take reasonable steps. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008); *Terebesi v. Torreso*, 764 F.3d 217, 243–44 (2d Cir. 2014). Whether an officer had a realistic opportunity to intervene is ordinarily a question of fact, *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994), but where the complaint fails to plead facts satisfying a threshold element of the claim, dismissal on the pleadings is proper.

The County's failure-to-intervene arguments are directed at Mullins and Lattimer. As to Mullins, the claim is resolved above: the FAC has been dismissed as to him in its entirety. As to Lattimer, the County initially advanced two arguments it later abandoned—that an officer cannot fail to intervene in his own violation, and that Lattimer was positioned outside the cell—and on reply rested solely on the contention that Plaintiff failed to allege his knowledge of her protected activity. (Defs.' Reply at 8–9.) Plaintiff responds that a violation and a failure to intervene may be pleaded in the alternative. *Hincapie v. City of New York*, 434 F. Supp. 3d 61, 79 (S.D.N.Y. 2020); *Arminio v. Holder*, No. 15 Civ. 5812 (NSR), 2016 WL 4154893, at *3 (S.D.N.Y. Aug. 1, 2016).

The only violation Plaintiff alleges Lattimer failed to prevent is the retaliatory character of the August 20 search. Perceiving that violation therefore required knowing of the protected activity said to have motivated it. For the reasons stated above, the FAC does not plead facts establishing that Lattimer knew of Plaintiff's August 19 complaint; that knowledge is alleged only on information and belief. Because Lattimer is not plausibly alleged to have known that the search was retaliatory, the FAC does not support an inference that a reasonable officer in his position would have understood that Plaintiff's rights were being violated, or that he had a realistic opportunity to intervene in a violation he is not alleged to have perceived. The failure-to-intervene claim against Lattimer is dismissed, without prejudice.

## VI. The Fourth Amendment Reference

The heading of this claim reads "42 U.S.C. § 1983: Fourth and Fourteenth Amendments—Failure to Intervene." (FAC at 21.) The County Defendants read the reference to the Fourth Amendment as asserting a claim that the searches of Plaintiff's cell violated her Fourth Amendment rights, and move to dismiss it on the ground that an inmate has no reasonable expectation of privacy in her cell and that a cell search, even a retaliatory or destructive one, does not implicate the Fourth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Plaintiff responds that the reference is a typographical error and that she asserts no Fourth Amendment claim. (Pl. Opp'n at 20.)

The Court agrees with Plaintiff, and the pleading confirms the point. The word "Fourth" appears only in the claim's heading. The allegations that follow, (FAC ¶¶ 161–165), plead the elements of a failure-to-intervene claim—awareness of a violation, a realistic opportunity to intervene, and a failure to do so—and contain nothing concerning search, seizure, or any expectation of privacy in Plaintiff's cell. Nothing in the claim rests on Fourth Amendment

doctrine. A failure-to-intervene claim is derivative; it protects against the failure to prevent an underlying constitutional violation, which here is the alleged interference with Plaintiff's religious exercise. Paired with the reference to the Fourteenth Amendment, under which such a claim is brought, the reference to the Fourth Amendment is an evident drafting error. It is not necessary to dismiss a Fourth Amendment claim, because none was pleaded. Dismissal under *Hudson* is therefore denied as moot, and this claim is construed, as it is framed in substance, as a failure-to-intervene claim under the Fourteenth Amendment predicated on the alleged violations of Plaintiff's rights under the First Amendment. So construed, the claim has been addressed above: it is dismissed as to Mullins and Lattimer and is not otherwise challenged on this motion.

## VII. Free Exercise as to Lattimer

The County Defendants argue, in a footnote, that Plaintiff's free exercise claim against Lattimer should be dismissed because she has not adequately alleged that he was personally involved in the violation of her rights. (Defs.' Mem. at 21 n.8 (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), and *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)).) Ordinarily an argument raised only in a footnote need not be considered, but because Plaintiff has responded to it on the merits, the Court addresses it. The County Defendants' argument lacks merit. The FAC alleges that Lattimer was among the officers who removed Plaintiff from her cell, ordered her to face the wall, refused her request to put on her hijab, and monitored her while the search proceeded. (FAC ¶¶ 89–92.) Those allegations describe Lattimer's own conduct, not merely his presence, and are sufficient at the pleading stage to allege his personal involvement. *Colon* does not help the County. It was a summary-judgment decision about supervisory liability, a theory *Tangreti* has since abrogated, whereas Plaintiff here alleges Lattimer's own conduct, not his liability as a supervisor. The free exercise claim against Lattimer survives.

## VIII. Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), courts are to freely give leave to amend when justice so requires. The deficiencies identified in this Opinion are matters of pleading rather than substance, and the Court cannot say on the present record that amendment would necessarily be futile. Because the exhaustion dismissals are not adjudications on the merits, and because the pleading deficiencies identified above may be curable, the dismissals ordered herein are without prejudice, and Plaintiff is granted leave to replead the dismissed claims consistent with this Opinion.

## CONCLUSION

For the foregoing reasons, the County Defendants' partial motion to dismiss is GRANTED in part and DENIED in part.

The following claims are dismissed without prejudice: (1) the Section 1983 municipal liability claim against the County; (2) the RLUIPA claim against the County; (3) the retaliation claim against Narcise and Lattimer arising from the August 20, 2024 search; (4) the retaliation claim against Narcise arising from the January 18, 2025 search; and (5) the failure-to-intervene claim against Lattimer. In addition, Plaintiff's March 2025 meal allegations and April 1, 2025 search allegations are dismissed without prejudice for failure to exhaust administrative remedies. Because no viable claim against Mullins remains, the FAC is dismissed in its entirety as to Defendant Mullins.

The motion is DENIED as to the free exercise claim against Lattimer and the retaliation claim against Gessner arising from the August 20, 2024 search. As to the reference to the Fourth Amendment, no Fourth Amendment claim having been pleaded, dismissal is DENIED as moot, and the failure-to-intervene claim is construed as arising under the Fourteenth Amendment. The

free exercise and failure-to-intervene claims against Defendants Conca, Palmer, Sedita, Narcise, and Gessner were not challenged by the motion and remain pending.

Plaintiff is granted leave to file a Second Amended Complaint as to the dismissed claims on or before September 28, 2026. If Plaintiff fails to file a Second Amended Complaint by that date, the claims dismissed without prejudice will be deemed dismissed with prejudice. Consistent with the Court's prior order (ECF No. 43), the non-moving defendants shall answer or otherwise respond by October 19, 2026. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 50.

SO ORDERED.

Dated: August 19, 2026
White Plains, NY

__________________________________
Nelson S. Román, U.S.D.J.